## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **BELLWETHER MUSIC FESTIVAL LLC,** | : | **Case No. 1:20-CV-463** |
| | : | |
| **and** | : | **Judge _____** |
| | : | |
| **ESK PRESENTS LLC,** | : | |
| | : | |
| **and** | : | **COMPLAINT for DECLARATORY** |
| | : | **JUDGMENT, INJUNCTIVE** |
| **PROJECT LIVE, LLC,** | : | **RELIEF and DAMAGES** |
| | : | |
| **and** | : | |
| | : | |
| **MARK W. MILLER,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AMY ACTON,** *in her official capacity as* | : | |
| *Director of the Ohio Department of Health* | : | |
| *and in her personal capacity,* | : | |
| | : | |
| **and** | : | |
| | : | |
| **WARREN COUNTY HEALTH DISTRICT,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **STARK COUNTY COMBINED** | : | |
| **GENERAL HEALTH DISTRICT,** | : | |
| | : | |
| **Defendant.** | : | |

Now come Plaintiffs BELLWETHER MUSIC FESTIVAL LLC; ESK PRESENTS LLC;

PROJECT LIVE, LLC; and MARK W. MILLER who, in support of their *Complaint*, allege as

follows:

## INTRODUCTION

1. This is an action for declaratory judgment, preliminary and permanent injunction, and damages pursuant to 42 U.S.C. §1983, arising from Defendants' unconstitutional conduct, policies, practices, regulations, restrictions, threats, intimidation, and/or harassment.

2. While AMY ACTON, as the Director of the Ohio Department of Health, may have certain latitude to regulate so as to ameliorate the effects of a pandemic, that latitude remains subject to constitutional limits, including needing to comply with the First Amendment and the Due Process Clause and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

3. Nonetheless, AMY ACTON, under color of state law, has acted in an arbitrary and capricious manner so as to infringe the fundamental liberty interests of Plaintiffs, as well as to infringe the First Amendment rights of Plaintiffs both directly and through discriminatory decrees by which some, but not all, First Amendment rights may be exercised.

4. As a direct result of the unconstitutional conduct and policies and practices of AMY ACTON, as well as the policy, practice of custom of the Ohio Department of Health, Plaintiffs faced an imminent risk of criminal prosecution and extensive daily fines, as well as continued irreparable harm to their rights under the First Amendment and the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. §

1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201, to secure declaratory relief; under 28 U.S.C. § 2202, to secure other relief, including permanent injunctive and damages; and under 42 U.S.C. § 1988, to award attorneys' fees.

6.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.8, as (i) the Defendant is situated within this judicial district; and (ii) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated

## PARTIES

7.     Plaintiff BELLWETHER MUSIC FESTIVAL LLC is an Ohio limited liability company.

8.     Plaintiff ESK PRESENTS LLC is an Ohio limited liability company.

9.     Plaintiff PROJECT LIVE, LLC, is an Ohio limited liability company.

10.    Plaintiff MARK W. MILLER is an Ohio citizen.

11.    Defendant AMY ACTION is and has been, at all times relevant herein, the Director of the Ohio Department of Health.

12.    Defendant WARREN COUNTY HEALTH DISTRICT is a county health district organized under Ohio Rev. Code Chapter 3709, charged with enforcing the Ohio Department of Health's Orders and empowered to make its own orders.  Only injunctive and declaratory relief is sought against the WARREN COUNTY HEALTH DISTRICT.

13.    Defendant STARK COUNTY COMBINED GENERAL HEALTH DISTRICT is a combined health district organized under Ohio Rev. Code Chapter 3709, charged with enforcing

the Ohio Department of Health's Orders and empowered to make its own orders. Only injunctive and declaratory relief is sought against the STARK COUNTY COMBINED GENERAL HEALTH DISTRICT.

14.　The actions of AMY ACTON described herein were either outside the scope of her respective office, or, if within the scope, undertaken in an arbitrary manner, grossly abusing the lawful powers of her office.

15.　AMY ACTON has personally undertaken and threatens to continue to personally undertake specific actions so as to violate the constitutional rights of the Plaintiffs and/or threaten to violate the constitutional rights of the Plaintiffs.

16.　All actions by AMY ACTON described herein were undertaken under color of state law and have caused and continue to cause and threaten the deprivation of Plaintiffs' rights protected by the United States Constitution.

17.　AMY ACTON is being sued herein both in her official capacity and in her individual capacity.

## FACTS

### *The Bellwether Music Festival*

18.　A multi-day, multi-stage alternative music festival known as the Bellwether Music Festival is held each summer at Renaissance Park, located just outside Waynesville, Ohio.

19.　ESK PRESENTS LLC manages and produces the Bellwether Music Festival on behalf of BELLWETHER MUSIC FESTIVAL LLC.

20.　Renaissance Park is nearly 260 acres spanning the county line between Warren County and Clinton County.

- 4 -

21.    The Bellwether Music Festival is currently scheduled to be held on August 6 to 8, 2020, with a national lineup of musical acts.

22.    The    website    for    the    Bellwether    Music    Festival    is    located    at https://www.bellwetherfest.com/.

23.    The Bellwether Music Festival has garnered significant regional and national attention with a significant number of attendees expected to travel in interstate commerce to attend the music festival and to camp at a designated site at the Renaissance Park so as to attend all days of the Festival.

24.    It takes nearly a year lead time to plan, organize and book the musical groups, as well as the various other aspects for a successful Bellwether Music Festival.

25.    Already to date, nearly $400,000 has been spent on contracts for the scheduled artists for the forthcoming Bellwether Music Festival.

26.    The music lineup already engaged for the forthcoming Bellwether Music Festival includes: Shovels & Rope; John Moreland; Davy Knowles; The Steepwater Band; The Devil Makes Three; The Growlers; The Lone Bellow; Cloud Nothings; Matt Holubowski; Hannah Wicklund; Early James; Louis Prince; Maria Carrelli; Frankly Speaking; Olivia Frances; Frontier Folk Nebraska; Nathaniel Rateliff; Langhorne Slim; Scarypoolparty; Hayes Carll; Waxahatchee; Nicole Atkins; Saintseneca; S.G. Goodman; Fenne Lily; Paul McDonald; Sam Williams; and Carriers.

27.    In addition to the musical performances, stand-up comedy acts are provided each night.

28.    As developed below, due to the actions and decrees of AMY ACTION, the Bellwether Musical Festival is currently precluded from proceeding forward as it falls within the ambit of being within the category of "parades, fairs, festivals, and carnivals" and such activities have been

banned throughout the State of Ohio by AMY ACTON, most recently through the *Director's Updated and Revised Order* issued on May 29, 2020. *See paragraphs 82 – 86 below.*

29. Events such as the Bellwether Music Festival are not of the nature that one can start-and-stop the event on immediate notice. Various preparations must occur well in advance. Additionally, sufficient marketing and advance ticket sales are necessary, equipment must be reserved and contracted, permits obtained, *etc.*

30. At this time, due to the unknown, arbitrary and ad hoc nature by which AMY ACTON has acted, it is unknown whether the Bellwether Music Festival and its attendees can fully and robustly engage in or enjoy the musical and related activities that occur as part of the Bellwether Music Festival.

31. BELLWETHER MUSIC FESTIVAL LLC and ESK PRESENTS LLC are quickly approaching a go-no-go deadline of whether to cancel the Bellwether Music Festival.

32. At present and under the current decrees of AMY ACTION, BELLWETHER MUSIC FESTIVAL LLC and ESK PRESENTS LLC would have no option but to cancel the Bellwether Music Festival, even though that would entail the loss of hundreds of thousands of dollars, less they sink additional hundreds of thousands of dollars in the wishful hope to experience the *noblesse oblige* of AMY ACTON at some time before the scheduled dates for the Bellwether Music Festival.

33. If the Bellwether Music Festival is cancelled due to the decrees and actions of AMY ACTON, then the various musicians already booked as part of the lineup will not be performing and the prospective attendees of the Bellwether Music Festival will not be able to hear and appreciate said musical performances.

34.     MARK W. MILLER desires to attend and camp at the forthcoming Bellwether Musical Festival so as to enjoy the three days of musical entertainment and activities, as well as engaging in the interactive communication that occurs with others in attendance.

35.     MARK W. MILLER has not been diagnosed with the COVID-19 virus nor, to his knowledge, has he been exposed to any individual who has been infected with the COVID-19 virus.  This notwithstanding, AMY ACTON has issued decrees that infringe and violate the First Amendment and liberty interests of MARK W. MILLER.

### *The Country Fest*

36.     A multi-day country music festival known as The Country Fest is held each summer at Clay's Park Resort, located just outside North Lawrence, Ohio.

37.     PROJECT LIVE, LLC, manages and produces The Country Fest.

38.     Clay's Park Resort is 500-acre resort in Stark County and is one of Ohio's top outdoor camping, water park, and event destinations, operating for 72 years in northeastern Ohio.

39.     The Country Fest is currently scheduled to be held on August 6 to 8, 2020, with a national lineup of musical acts.

40.     The website for The Country Fest is located at https://www.thecountryfest.com/.

41.     The Country Fest has garnered significant regional and national attention with a significant number of attendees expected to travel in interstate commerce to attend the music festival and to camp at a designated site at Clay's Park Resort so as to attend all days of The Country Fest.

42.     It takes at least a year lead time to plan, organize and book the musical groups, as well as the various other aspects for a successful musical event.

43.    Already to date, nearly $2 million has been spent on contracts for the scheduled artists for the forthcoming The Country Fest.

44.    The music events already engaged for the forthcoming The Country Fest includes: Brett Eldredge; The Cadillac Three; Niko Moon; Teddy Robb; Eric Church; Jimmie Allen; Raelynn; Jameson Rodgers; Dierks Bentley; Jon Pardi; Michael Ray; Sean Stemaly; and Ashland Craft.

45.    As developed below, due to the actions and decrees of AMY ACTION, The Country Fest is currently precluded from proceeding forward as it falls within the ambit of being with the category of "parades, fairs, festivals, and carnivals" (excepting "county fairs") and such activities have been banned throughout the State of Ohio by AMY ACTON, most recently through the *Director's Updated and Revised Order* issued on May 29, 2020.  *See paragraphs 82 – 86 below.*

46.    Events such as The Country Fest are not of the nature that one can start-and-stop the event on immediate notice. Various preparation must occur well in advance. Additionally, sufficient marketing and advance ticket sales are necessary, equipment must be reserved and contracted, permits obtained, *etc.*

47.    At this stage, due to the unknown, arbitrary and ad hoc nature by which AMY ACTON has acted, it is unknown whether The Country Fest and its attendees can fully and robustly engage in or enjoy the musical and related activities that occur as part of The Country Fest.

48.    Over the past several weeks and months, PROJECT LIVE, LLC, has made repeated inquiries to the STARK COUNTY BOARD OF HEALTH as to whether The Country Fest will be able to go forward; the latest response, on June 6, 2020, indicated that that STARK COUNTY BOARD OF HEALTH has taken the position that "concerts remain closed for obvious reasons" and this includes the forthcoming The Country Fest.

49.   PROJECT LIVE, LLC, is quickly approaching a go-no-go deadline of whether to cancel The Country Fest.

50.   At present and under the current decrees of AMY ACTION, PROJECT LIVE, LLC would have no option but to cancel The Country Fest, even though that would entail the loss of hundreds of thousands of dollars, less they sink additional hundreds of thousands of dollars in the wishful hope to experience the *noblesse oblige* of AMY ACTON at some time before the scheduled dates for The Country Fest.

51.   If The Country Fest is cancelled due to the decrees and actions of AMY ACTON, then the various musicians already booked as part of the lineup will not be performing and the prospective attendees of The Country Fest will not be able to hear and appreciate said musical performances.

### *THE DECREES OF AMY ACTON*
### *March 9, 2020 – Executive Order 2020-01D*

52.   On March 9, 2020, Ohio Governor R. Michael DeWine issued *Executive Order 2020-01D* wherein he declared, *inter alia*, a state of emergency "for the entire State to protect the well-being of the citizens of the [sic] Ohio from the dangerous effects of COVID-19".

53.   A copy of *Executive Order 2020-01D* is attached hereto as *Exhibit A*.

54.   Within *Executive Order 2020-01D*, Governor DeWine ordered and directed "[t]he [Ohio] Department of Health [to] issue guidelines for private businesses regarding appropriate work and travel restrictions, if necessary." *Executive Order 2020-01D ¶4.*

55.   Instead of simply issuing "guidelines for private businesses regarding appropriate work and travel restrictions", AMY ACTON has proceeded to issue and sought the enforcement of

decrees that restrict the constitutional rights, freedoms and liberties of the people of the State of Ohio all on pain of criminal liability.

### March 17, 2020 –Director's Order re: Mass Gatherings

56. On March 17, 2020, AMY ACTON issued the *Director's Order re: Mass Gatherings*.

57. A copy of the *Director's Order re: Mass Gatherings* is attached hereto as *Exhibit B*.

58. Within the *Director's Order re: Mass Gatherings*, AMY ACTON decreed:

Mass gatherings are prohibited in the State of Ohio.

Mass gatherings are defined as any event or convening that brings together fifty (50) or more persons in a single room or single space at the same time, such as an auditorium, stadium, arena, large conference room, meeting hall, or any other confined indoor or outdoor space.

*Director's Order re: Mass Gatherings ¶¶1 & 2.*

59. Within the *Director's Order re: Mass Gatherings*, AMY ACTON specifically declared "parades, fairs and festivals" were included within the ambit of what constitutes a mass gathering.

*Director's Order re: Mass Gatherings ¶2.*

60. Within the *Director's Order re: Mass Gatherings*, AMY ACTON declared that the *Director's Order re: Mass Gatherings* went into immediate effect and would "remain in full force and effect until the State of Emergency declared by the Governor no longer exists, or the Director of the Ohio Department of Health rescinds or modifies [the] Order." *Director's Order re: Mass Gatherings ¶7.*

### March 22, 2020 –Director's Stay at Home Order

61. On March 22, 2020, AMY ACTON issued the *Director's Stay at Home Order*.

62. A copy of the *Director's Stay at Home Order* is attached hereto as *Exhibit C*.

63.     Within the *Director's Stay at Home Order*, AMY ACTON decreed that that "non-essential businesses and operations must cease" and "effective at 11:59 pm on March 23, 2020, all persons are to stay at home or their place of residence unless they are engaged in Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations as set forth in this Order."

64.     Within the *Director's Stay at Home Order*, AMY ACTON decreed, *inter alia*, that:

> All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited….  Any gathering of more than ten people is prohibited unless exempted by this Order….

> All places of public amusement, whether indoors or outdoors, including, but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed.

*Director's Stay at Home Order ¶3.*

### April 2, 2020 – Amended Director's Stay at Home Order

65.     On April 2, 2020, AMY ACTON renewed and continued the *Director's Stay at Home Order*, with the issuance of the *Amended Director's Stay at Home Order*.

66.     A copy of the *Amended Director's Stay at Home Order* is attached hereto as *Exhibit D.*

67.     Within the *Amended Director's Stay at Home Order*, AMY ACTON ordered and decreed, *inter alia*, that "all individuals living within the State of Ohio are ordered to stay at home or at their place of residence except as allowed in this Order."

68.     Within the *Amended Director's Stay at Home Order*, AMY ACTON decreed, *inter alia*, that:

> <u>All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited</u>….  <u>Any gathering of more than ten people is prohibited</u> unless exempted by this Order….

- 11 -

> All places of public amusement, whether indoors or outdoors, including, but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed…. Swimming pools, whether public or private, shall be closed unless it is a swimming pool for a single household. Campgrounds shall be closed, except that persons residing in recreational vehicles ("RVs") at campgrounds who genuinely have no other viable place of residence may remain in the campground….

*Amended Director's Stay at Home Order ¶3* (emphasis added).

69.    Within the *Amended Director's Stay at Home Order*, AMY ACTON ordered and decreed, *inter alia*, that:

> all individuals currently living within the State of Ohio are ordered to stay at home or at their place of residence except as allowed in this Order. To the extent individuals are using shared or outdoor spaces when outside their residence, they must at all times and as much as reasonably possible, maintain social distancing of at least six feet from any other person, with the exception of family or household members…. All persons may leave their homes or place of residence only for Essential Activities, Essential Governmental Functions, or to participate in Essential Businesses and Operations….

*Amended Director's Stay at Home Order ¶1.*

### April 30, 2020 – Amended Director's Stay Safe Ohio Order

70.    On April 30, 2020 AMY ACTON issued the *Director's Stay Safe Ohio Order*.

71.    A copy of the *Director's Stay Safe Ohio Order* is attached hereto as *Exhibit E.*

72.    Within the *Director's Stay Safe Ohio Order*, AMY ACTON decreed that "[a]ll businesses and operations in the State, except as defined [therein], are permitted to reopen within the State so long as all workplace safety standards are met." *Director's Stay Safe Ohio Order ¶2.*

73.    Within the *Director's Stay Safe Ohio Order*, AMY ACTON decreed, *inter alia*, that:

> All public and private gatherings of any number of people occurring outside a single household and connected property, or living unit and connected property are prohibited…. Any gathering of more than ten people is prohibited unless exempted by this Order….

*Director's Stay Safe Ohio Order ¶4.*

74.    Within the *Director's Stay Safe Ohio Order*, AMY ACTON decreed, *inter alia*, that certain businesses which she delineated therein could resume activities.

75.    But also within the *Director's Stay Safe Ohio Order*, AMY ACTON decreed, *inter alia*, that:

> the following businesses and operations are to remain closed until this Order is amended or rescinded: …[the *Director's Order re: Mass Gatherings* of March 17, 2020] that closed all auditoriums, stadiums, arenas, parades, fairs, festivals, bowling alleys, health clubs, fitness centers, workout facilities, gyms, yoga studios, indoor trampoline parks, indoor water parks, movie and other theatres (excluding drive-in theatres), performance theatres, all public recreation centers, and indoor sports facilities in the State remains in effect. All places of public amusement, whether indoors or outdoors, including, but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed…. Swimming pools, whether public or private, shall be closed unless it is a swimming pool for a single household. Campgrounds shall be closed, except that persons residing in recreational vehicles ("RVs") at campgrounds who genuinely have no other viable place of residence may remain in the campground….

*Director's Stay Safe Ohio Order ¶13g* (emphasis added).

### *May 20, 2020 –Director's Camp Safe Ohio Order*

76.    On May 20, 2020, AMY ACTON issued the *Director's Camp Safe Order* wherein she modified provisions of the *Director's Stay Safe Ohio Order.*

77.    A copy of the *Director's Camp Safe Ohio Order* is attached hereto as *Exhibit F.*

78.    Within the *Director's Camp Safe Order*, AMY ACTON decreed, *inter alia*, that "[a]ll campgrounds…are permitted to reopen in the State so long as all safety standards are met". *Director's Camp Safe Order ¶2.* Within such decree, AMY ACTON mandates that the businesses and operations at the campgrounds "shall continue to comply with Social Distancing Requirement

as defined in this Order, including by maintaining six-foot social distancing for both employees and members of the public at all times…" *Director's Camp Safe Order ¶2.*

79.   Within the *Director's Camp Safe Order*, AMY ACTON specifically decreed that the *Director's Stay Safe Ohio Order* was amending the *Director's Stay Safe Ohio Order ¶13g* so that the *Director's Stay Safe Ohio Order ¶13g* should now read to include the following:

> …[the *Director's Order re: Mass Gatherings* of March 17, 2020] that closed all auditoriums, stadiums, arenas, parades, fairs, festivals, bowling alleys, health clubs, fitness centers, workout facilities, gyms, yoga studios, indoor trampoline parks, indoor water parks, movie and other theatres (excluding drive-in theatres), performance theatres, all public recreation centers, and indoor sports facilities in the State remains in effect.  All places of public amusement, whether indoors or outdoors, including, but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed….  Swimming pools, whether public or private, shall be closed unless it is a swimming pool for a single household.

*Director's Camp Safe Order ¶5* (emphasis added).

80.   Included within the *Director's Camp Safe Order*, AMY ACTON specifically decreed that the *Director's Camp Safe Order* "may be enforced by State and local law enforcement to the extent set forth in Ohio law."  *Director's Camp Safe Order ¶7.*

81.   Included within the *Director's Camp Safe Order*, AMY ACTON specifically threatened criminal violations by acknowledging that a violation of any rule that she adopts or any order she decrees constitutes "a misdemeanor of the second degree, which can include a fine of not more than $750 or not more than 90 days in jail,  or both."  *Director's Camp Safe Order ¶8.*

### *May 29, 2020 –Director's Updated and Revised Order*

82.   On May 29, 2020, AMY ACTON issued the *Director's Updated and Revised Order.*

83.   A copy of the *Director's Updated and Revised Order* is attached hereto as *Exhibit G.*

- 14 -

84.    Within the *Director's Updated and Revised Order*, AMY ACTON continued and reiterated the prohibition of the freedom and liberty of citizens of Ohio that she first decreed on March 22, 2020, in the *Director's Stay at Home Order*, AMY ACTON decreed, *inter alia*, that:

> All public and private gatherings of greater than 10 people occurring outside a single household and connected property, or living unit and connected property are prohibited, except for the limited purposes permitted by Orders of [AMY ACTON] ….

*Director's Updated and Revised Order ¶3* (emphasis added).

85.    While the *Director's Updated and Revised Order* declares that the prohibition against public and private gatherings of greater than 10 people "does not apply to First Amendment protected speech, including petition or referendum circulators and any activity by the Media", *Director's Updated and Revised Order ¶3,* the *Director's Updated and Revised Order* specifically delineated

> the following businesses and operations are to remain closed until this Order is amended or  rescinded: …[the *Director's Order re: Mass Gatherings* of March 17, 2020] that closed auditoriums, stadiums, arenas, parades, fairs, festivals, bowling alleys, health clubs, fitness centers, workout facilities, gyms, yoga studios, indoor trampoline parks, indoor water parks, movie and other theatres (excluding drive-in theatres), performance theatres, all public recreation centers, and indoor sports facilities in the State remains in effect, except that … the mass gathering definition is now any number greater than 10 persons….  All places of public amusement, whether indoors or outdoors, including, but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed….

*Director's Updated and Revised Order ¶9d* (emphasis added).

86.    By specifically and explicitly delineating that "parades, fairs, [and] festivals" are still prohibited activities throughout the State of Ohio, AMY ACTON has demonstrated the purpose

and the intent of the *Director's Updated and Revised Order* and the continued prohibition against mass gatherings applies to such activities.

87.    Based upon, *inter alia*, the *Director's Updated and Revised Order*, the Bellwether Music Festival and The Country Fest are precluded from proceeding forwarded, less the individuals running or producing such festivals face the real and imminent prospect of criminal prosecution, together with other vendors supporting the festivals also facing the real and imminent prospect of criminal prosecution and those people attending the festivals also facing the real and imminent prospect of criminal prosecution.

88.    Ohio Rev. Code § 3701.56 provides that "boards of health of a general or city health district . . . shall enforce quarantine and isolation orders*."*

89.    Pursuant to both the various decrees of AMY ACTON and Ohio Rev. Code § 3701.56, WARREN COUNTY HEALTH DISTRICT maintains authority to enforce such decrees, including precluding or restricting the Bellwether Music Festival, including doing so on pain of criminal prosecution.

90.    Pursuant to both the various decrees of AMY ACTON and Ohio Rev. Code § 3701.56, STARK COUNTY COMBINED GENERAL HEALTH DISTRICT maintains authority to enforce such decrees, including precluding or restricting the Bellwether Music Festival, including doing so on pain of criminal prosecution.

### *The claimed bases for the dictates of AMY ACTON*
### *have been ad hoc decrees based upon ipse dixit that have proven baseless*

91.    When the threat of COVID-19 virus first arose in March 2020, it was generally recognized and acknowledged that a significant number, if not most, people would eventually be exposed to the COVID-19 virus.

92.  At a news conference held on March 12, 2020, AMY ACTON acknowledged that "the entry [of the virus] will be amongst us.  We know forty and upwards percent of our population will eventually get this [virus]."[1]

93.  Thus, as stated by AMY ACTON on March 12, 2020, the governmental interest was "slowing [the spread of the virus]" in order to "keep[] the numbers low enough so we don't overwhelm over hospital systems."  AMY ACTON specifically tied the effort to mitigate the *rate* at which the virus spread to the availability of medical equipment: "there are only so many ventilators; there are only so many eco machine."[2]

94.  And the interest of not overwhelming the health care system and capacity was reiterated by Ohio Governor R. Michael DeWine at that same news conference held on March 12, 2020:[3]

> We have to take this action.  We have to do everything we can to have an interruption.  We have to do everything we can to slow down the spread of this virus.  We know that it will continue to spread.  But slowing it down will enable out health care providers, our hospitals, our doctors to be able to stay up with the medical problems that this virus is causing….  We do not want to be in a situation where our medical providers are making life and death decisions as to who lives and who dies.  That is something that is simply unacceptable.

---

[1]    Audiovisual of the news conference of March 12, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-12-2020-covid-19-update).  These comments start at approximately 31:02 of the recording.

[2]    Audiovisual of the news conference of March 12, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-12-2020-covid-19-update). These comments start at approximately 31:08 of the recording.

[3]    Audiovisual of the news conference of March 12, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-12-2020-covid-19-update). These comments start at approximately 23:12 of the recording.

95. At a news conference held on March 24, 2020, AMY ACTON identified the basis for their actions: "And the ICU, folks, is our focus through this. It's all about the capacity of our hospitals to treat the sickest."[4]

96. Over the ensuing months, AMY ACTON and Governor DeWine moved significantly away from the initial justification for the decrees of AMY ACTON as necessary to not overwhelm the health care system and capacity to now some nebulous concept of generally protecting people from themselves.

97. At no time during the past three months has hospital or medical provider, in the State of Ohio or elsewhere in the United States, been unable to have a ventilator or other medical equipment when needed to treat a person infected with COVID-19.

98. And the baseless and ad hoc nature by which the decrees of AMY ACTON and the restrictions on constitutional rights effectuated therein can be seen further in other pronouncement and actions of AMY ACTON and/or Governor DeWine.

99. At a news conference held on March 12, 2020, Ohio Governor R. Michael DeWine declared:[5]

> We are told by medical experts that whatever the number is today, it will double in six days and then that will just continue on and on and on….

---

[4] Audiovisual of the news conference of March 24, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-24-2020-covid-19-update). These comments start at approximately 21:55 of the recording.

[5] An audiovisual recording of the news conference of March 12, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-12-2020-covid-19-update). These comments start at approximately 00:52 of the recording.

100. At a news conference held on March 12, 2020, AMY ACTON described as a "key clue" to COVID-19 was what she characterized as the "logarithmic spread of disease" by it "doubling every six days".[6]

101.   At no time – on March 12, 2020, or since then – have the COVID-19 infections doubled in the State of Ohio or elsewhere in the country every six days.

102.   At that same news conference held on March 12, 2020, Ohio Governor R. Michael DeWine then introduced AMY ACTON in order to offer the "science" on COVID-19; AMY ACTON then proceeded to state, as a factual matter that, as of that date, over 100,000 people in Ohio were already infected with the COVID-19 virus, specifically declaring:[7]

> We know now, just the fact of community spread, says that 1%, at the very least 1% of our population is carrying this virus in Ohio today.  We have over 11.7 million in Ohio, so the math is over 100,000.  So that just give gives you an idea of the virus spreads and is spreading quickly.

103.   And this pronouncement of over 100,000 people in Ohio were already infected with the COVID-19 virus as of March 12, 2020, was reiterated and propagated by Governor DeWine when he issued a tweet on the matter that same day, declaring what "we know" as a factual matter:



---

6    An audiovisual recording of the news conference of March 12, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-12-2020-covid-19-update).  These comments start at approximately 29:27 of the recording.

7    An audiovisual recording of the news conference of March 12, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-12-2020-covid-19-update).  These comments start at approximately 32:56 of the recording.

104.   At the time that Governor DeWine and AMY ACTON declared that over 100,000 people in Ohio were already infected with the COVID-19 virus, the total number of confirmed cases of COVID-19 infection in the State of Ohio was a total 15 persons.

105.   There was no basis in fact for the statement of AMY ACTON or the tweet of Governor DeWine that, as of March 12, 2020, over 100,000 people in Ohio were already infected with the COVID-19 virus.   The assertion of that number of infections was arbitrary and baseless, but demonstrates the false premise driving the ensuing arbitrary and unconstitutional actions by AMY ACTON.

106.   Furthermore, the so-called "expert" upon which Governor DeWine and AMY ACTON have based their actions has been that of now- discredited British epidemiologist Neil Ferguson

107.   In fact, at a news conference held on March 17, 2020, AMY ACTON acknowledged the source of her decisions as being the discredited British epidemiologist Neil Ferguson:[8]

> I'm about to describe to you is what we see is coming, but when we make these choices we're making and that the governor's making…this really is going to get us through it in a lot sooner, in a sense a lot better way.  So it's very important to say that there was an important study that came out in the United Kingdom by Dr. Ferguson, and it was done by the Imperial College, and they're really taking a look at the very best modeling and data we have.…  [T]he models [is where] they came up with some of the new guidance, about 10 people in a room, about social distancing…
> …This was a study that's been done in the UK and what the study looked like, because you're going to see it in the media today. And I don't want people to become overly frightened.…  But the point of this is that this study was done looking as if we did nothing. And then it looks very carefully at everything we're doing and why collectively it will make a difference. So we've always been talking about the curve. And if we did nothing, again, and I'll refer you to the UK study by Ferguson.

---

[8]   An audiovisual recording of the news conference of March 17, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-17-2020-covid-19-update).  These comments start at approximate 11:51 of the recording.

108.   The study by Neil Ferguson upon which AMY ACTON relied from the outset for her decrees and actions has been completed repudiated as premised upon a completely faulty model.

109.   Then, at a news conference held on March 24, 2020, AMY ACTON declared, without factual or scientific basis, that the situation in Ohio was on track to follow what was being experienced in Italy or New York City, lagging by only 7 to 14 days:[9]

> it's expected in countries around the world that we will be following, more of what we've seen in Italy, that is certainly the case in Ohio…. that what we can really expect is that we're on a 7 to 14 day lag behind New York City.

110.   And in support of her declaration that the State of Ohio was 7 to 14 days behind Italy or New York City, AMY ACTON cited to an op-ed, *i.e.*, an opinion piece, in the *New York Times* yet AMY ACTON described such opinion piece as "the lastest science".[10]

111.   At no time – on March 24, 2020, or 7 to 14 days afterwards, or at present – has the State of Ohio experienced anything close or comparable to the COVID-19 situation that occurred in Italy or New York City.  Yet, AMY ACTON has proceeded to issue her decrees and to violate the constitutional rights of Plaintiffs and others premises upon such a false perspective.

112.   At a news conference held on March 24, 2020, AMY ACTON the purpose behind ensuing effort was and would be to not overwhelm the health care system and capacity:[11]

> it's all about the curve. And so, we're doing our very best to keep everything we're doing with our measures and our policy is helping minimize the impact on our hospital system….

---

[9]   Audiovisual of the news conference of March 24, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-24-2020-covid-19-update). These comments start at approximately 22:24 of the recording.

[10]   Audiovisual of the news conference of March 24, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-24-2020-covid-19-update). These comments start at approximately 22:46 of the recording.

[11]   Audiovisual of the news conference of March 24, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-24-2020-covid-19-update). These comments start at approximately 23:12 of the recording.

113.   Also at that news conference held on March 24, 2020, AMY ACTON claimed the "science" indicated Ohio would be experiencing 6,000 new cases of COVID-19 infections without any mitigation effort:[12]

> We know that at some point soon, in a worst-case scenario, had we done nothing in Ohio, and we're doing everything the science has said to do in Ohio. But they're anticipating that there could be up to 6,000 new cases a day if we aren't all abiding by these things we're doing. And if you had 6,000 new cases a day, clearly that would quickly outpace our hospital capability.

114.   But that which AMY ACTON self-characterized as "science" lacked any of the objective and critical analysis inherent in scientific methodology and, instead, was based upon nothing more that her ad hoc declarations and *ipse dixit* (just like her earlier declaration on March 12, 2020, that over 100,000 people in Ohio were already infected with the COVID-19 virus).

115.   At a news conference held on April 20, 2020, Governor DeWine declared success on the goal of flattening the infection curve so as to not overwhelm the medical: "We have flattened the curve…."[13]

116.   At a news conference held on April 20, 2020, AMY ACTON declared:[14]

> We know that we are going to have to learn [to live] with this virus. We've talked about the fact that there is no putting the genie back in the bottle. <u>Whether we have orders or not orders, whatever we do, the virus is spreading amongst us.</u>

---

[12]   Audiovisual of the news conference of March 24, 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-3-24-2020-covid-19-update). These comments start at approximately 27:15 of the recording.

[13]   Audiovisual of the news conference of April 20 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-4-20-2020-covid-19-update). These comments start at approximately 4:43 of the recording.

[14]   Audiovisual of the news conference of April 20 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-4-20-2020-covid-19-update). These comments start at approximately 38:49 of the recording.

117.   At a news conference held on April 20, 2020, AMY ACTON addressed that, as of that date, the total infection amongst people in Ohio: "could be anywhere from five to 15% of our population that has been affected."[15]

118.   As with her declaration on March 12, 2020, that over 100,000 people in Ohio were already infected with the COVID-19 virus, this latest pronounced was also arbitrary and baseless, and, once again, demonstrates the false premise driving the ensuing arbitrary and unconstitutional actions by AMY ACTON.

119.   Additionally, AMY ACTON utilized "deaths *reported* in the last 24 hours", as opposed to "deaths *occurring* in the last 24 hours" in a deliberate and conscious effort to inflate the concentration of deaths tied to COVID-19.

120.   For example, it has been reported that, on May 23, 2020, AMY ACTON and the Ohio Department of Health indicated there were 84 reported deaths over the past 24 hours; however, the real number of deaths occurring during that period totaled seven (7), a difference of 77.

121.   Yet, the distinction – deaths reported versus deaths actually occurring – was not clearly reported by the news media when, for example, in reporting on the announcement on deaths on May 23, 2020, the headline of the article in *The Cincinnati Enquirer* declared "Coronavirus in Ohio: Deaths more than  double the previous 24-hour period."[16]

122.   Furthermore, based upon information and belief, regardless of *when* a death occurred, deaths are being reported as a COVID-19 death not based upon the virus as causing the death but, rather, simply based upon whether the decedent either had a confirmed infection or a suspected

---

[15]   Audiovisual of the news conference of April 20 2020, is available on the website of The Ohio Channel (https://www.ohiochannel.org/video/governor-mike-dewine-4-20-2020-covid-19-update). These comments start at approximately 39:10 of the recording.

[16]   https://www.cincinnati.com/story/news/2020/05/23/coronavirus-cincinnati-columbus-cleveland-ohio-deaths-more-than-double-previous-24-hour-period/5250810002/

infection of the COVID-19 virus.  As a result, the COVID-19 death rate reported by AMY ACTON

is higher than a death rate which would be based upon the death being caused by COVID-19.

### *A state court has already appropriately characterized AMY ACTON's decrees and actions as* **impermissibly arbitrary, unreasonable, and oppressive manner**

123.   In a challenge in state court to the decrees and actions of AMY ACTON wherein she

unilaterally closed gyms and fitness centers, the state court judge has recognized the arbitrary and

baseless nature of the decrees and actions of AMY ACTON.

124.   In a case in Lake County Common Pleas Court, styled *Rock House Fitness v. Acton,*

and assigned Case No. 20-CV-000631, Judge Eugene Lucci granted a preliminary injunction

allowing gyms and fitness centers throughout the State of Ohio to open and operate,

notwithstanding the decrees of AMY ACTON.

125.   A copy of the *Order Granting Preliminary Injunction* issued by Judge Lucci is attached

hereto as *Exhibit H*.

126.   With the *Order Granting Preliminary Injunction*, Judge Lucci:

    a.  recognized that, while AMY ACTON as Director of the Ohio Department of Health, was granted ultimate authority in matters of quarantine and isolation, such matters and authority only extended to either: (i) restricting the movements or activities of an individual "who has been exposed to a communicable disease" (quarantine); or (ii) separating from others a person "infect" with a communicable disease (isolation), and that the length of such quarantine or isolates is for the usual incubation person for the communicable disease (which in the case of COVID-19) is 14 days.  *See Order Granting Preliminary Injunction* ¶¶14-17 & 23-25;

    b.  instead of doing so, AMY ACTON has actually "quarantined the entire people of the state of Ohio, for much more than 14 days".  *See Order Granting Preliminary Injunction* ¶26;

    c.  AMY ACTON "has no statutory authority to close all bueinsses… for a period of two months".  *See Order Granting Preliminary Injunction* ¶26;

    d.  Declaring that AMY ACTON "has acted in an impermissibly arbitrary, unreasonable, and oppressive manner and without any procedural safeguards".  *See Order Granting Preliminary Injunction* ¶26.

- 24 -

*First Amendment rights implicated*

127. The First Amendment's protections encompass entertainment, including live musical performances. *See, e.g., Ward v Rock Against Racism*, 491 U.S. 781, 790 (1989)(music performances); *see also Schacht v United States*, 398 U.S. 58 (1970)(theater); *Joseph Burstyn, Inc. v Wilson*, 343 U.S. 495 (1952)(film).

128. "[T]he holding of festivals allows for the communication [of 'views on society, life, and other more philosophical subjects'] to extend to even more members [of an organization] and increases the likelihood that this conduct will be noticed by, and thereby communicated to, the surrounding community." *Adhi Parasakthi Charitable, Medical, Educational, and Cultural Society of North America v. Township of West Pikeland*, 721 F.Supp.2d 361 (E.D. Pa. 2010).

129. And "[e]ven when offered for entertainment purposes, and not political or ideological reasons, music is entitled to First Amendment protection." *Hassay v. Mayor & City Council of Ocean City*, 955 F.Supp.2d 505 (D. Md. 2013); *see Atlantic Beach Casino, Inc. v. Morenzoni*, 749 F.Supp. 38, 41 (D.R.I. 1990)("[t]he 2 Live Crew performance is protected First Amendment activity").

130. In prohibiting and continuing to prohibit "parades, fairs, festivals, and carnivals" throughout the State of Ohio (with the exception of "county fairs" which are permitted), AMY ACTON has violated and continues to threaten to violate the First Amendment rights of the Plaintiffs, as well as the First Amendment rights of the performers engaged to perform at "parades, fairs, festivals, and carnivals" and the First Amendment rights of the public who would attend such performances.

131. Specifically, because the Bellwether Musical Festival would fall within the category of "parades, fairs, festivals, and carnivals" throughout the State of Ohio (with the exception of "county fairs" which are permitted), AMY ACTON has violated and continues to threaten to

violate the First Amendment rights of the Plaintiffs, as well as the First Amendment rights of the performers engaged to perform at "parades, fairs, festivals, and carnivals" and the First Amendment rights of the public who would attend such performances.

132.  Specifically, because The Country Fest would fall within the category of "parades, fairs, festivals, and carnivals" throughout the State of Ohio (with the exception of "county fairs" which are permitted), AMY ACTON has violated and continues to threaten to violate the First Amendment rights of the Plaintiffs, as well as the First Amendment rights of the performers engaged to perform at "parades, fairs, festivals, and carnivals" and the First Amendment rights of the public who would attend such performances.

133.  There is neither a compelling governmental interest or a significant governmental interest that justifies the decrees and actions of AMY ACTON whereby the Bellwether Musical Festival is prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend the Bellwether Musical Festival.

134.  There is neither a compelling governmental interest or a significant governmental interest that justifies the decrees and actions of AMY ACTON whereby The Country Fest is prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend The Country Fest.

135.  There is neither a compelling governmental interest or a significant governmental interest that justifies the decrees and actions of AMY ACTON whereby parades, fairs, festivals, and carnivals throughout the State of are prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers,

producer, performers and those in attendance at or who desire to attend such parades, fairs, festivals and carnivals.

136.  The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON whereby the Bellwether Musical Festival is prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend the Bellwether Musical Festival is not being done in the least restrictive or even a narrowly tailored manor to any putative governmental interest that may actually exist to justify the absolute ban or restrictions.

137.  The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON whereby The Country Music Fest is prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend The Country Fest is not being done in the least restrictive or even a narrowly tailored manor to any putative governmental interest that may actually exist to justify the absolute ban or restrictions.

138.  The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON whereby parades, fairs, festivals, and carnivals throughout the State of Ohio are prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend such parades, fairs, festivals, and carnivals throughout the State of Ohio is not being done in the least restrictive or even a narrowly tailored manor to any putative governmental interest that may actually exist to justify the absolute ban or restrictions.

139.  The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON whereby the Bellwether Musical Festival is prohibited or otherwise restricted so as to infringe the

freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend the Bellwether Musical Festival does not afford sufficient alternative channels for the speech and peaceable assembly of the sponsors, organizers, producer, performers and those in attendance .

140.  The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON whereby The Country Fest is prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend The Country Fest does not afford sufficient alternative channels for the speech and peaceable assembly of the sponsors, organizers, producer, performers and those in attendance.

141.  The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON whereby parades, fairs, festivals, and carnivals throughout the State of Ohio (with the exception of county fairs) are prohibited or otherwise restricted so as to infringe the freedom of speech and freedom to peaceably assembly afforded to the sponsors, organizers, producer, performers and those in attendance at or who desire to attend such parades, fairs, festivals, and carnivals throughout the State of Ohio does not afford sufficient alternative channels for the speech and peaceable assembly of the sponsors, organizers, producer, performers and those in attendance.

*Other First Amendment activities have been allowed and further
demonstrate the baseless nature of the decrees and actions of AMY ACTON*

142.  While the First Amendment activities of Plaintiffs are still explicitly prohibited by the decrees of AMY ACTON, the decrees and actions of AMY ACTON have allowed and permitted mass gatherings of people throughout the State of Ohio since March 2020.

143.    In particular, for approximately the past fortnight, other First Amendment activities and associated speech have been allowed and authority to occur with no mandate or effort to engage in safety protocols, including social distancing.

144.    There is no justifiable bases by which certain First Amendment activities are allowed unabated by AMY ACTON or her decrees while the First Amendment activities of Plaintiffs and others are verboten by the decrees and actions of AMY ACTON.

145.    With respect to the mass gatherings over the course of the past fortnight, *The Cincinnati Enquirer* reported that, on June 7, 2020, "[m]ore than 4,000 people gathered at Fountain Square", the main square in downtown Cincinnati.[17]

146.    Accompanying the story in *The Cincinnati Enquirer* reporting of over 4,000 people gather in close proximity was the following photograph of the gathering:



147. As further example, *Freshwater Cleveland* published the following photographs of crowds congregating in downtown Cleveland on May 30, 2020:[18]

---

[17]    https://www.cincinnati.com/story/news/2020/06/07/george-floyd-cincinnati-federation-teachers-join-sunday-protests/3170245001/
[18]    https://www.freshwatercleveland.com/features/GeorgeFloyd060120.aspx

- 29 -



148. *The Cleveland Plain Dealer* published the following photographs of crowds congregating in downtown Cleveland on May 30, 2020:[19]

---

[19] https://www.cleveland.com/metro/2020/06/cuyahoga-county-sheriff-says-department-was-unprepared-for-scale-of-protests-that-turned-into-riots-in-downtown-cleveland.html





149. *The Columbus Dispatch* published the following photographs of crowds congregating in downtown Columbus on June 2, 2020:[20]



---

[20] https://www.dispatch.com/news/20200603/downtown-columbus-protests-remain-peaceful

150.    The foregoing photographs, together with the activities that have occurred during the past fortnight, demonstrate there is no justifiable reason or basis for the decrees and actions of AMY ACTON whereby the First Amendment activities during the past fortnight can occur without being subject to the decrees and actions of AMY ACTON, including the attendant criminal aspects thereto, while the First Amendment activities of the Plaintiffs are explicitly prohibited and subject Plaintiffs and others to the prospect of criminal prosecution.

151.    There is no difference between a large crowd gathering in the downtown of a large Ohio city to hear speech from speakers versus a large crowd gathering at Renaissance Park or Clay's Park Resort (or at other venues) to hear speech in the form of music and other entertainment. Yet, AMY ACTON has, through her decrees and actions, explicitly allowed and condoned the former while prohibiting outright the latter.

152.    Furthermore, AMY ACTION has decreed and permitted amusement parks (including King's Island and Cedar Point) to open and operate wherein musical performances also take place and are allowed to occur.  Yet, she continues to discriminate against the speech and peaceable assembly of the sponsors, organizers, producer, performers and those in attendance of those at parades, fairs, festivals, and carnivals throughout the State of Ohio (with the exception of county fairs), including that of the Plaintiffs without sufficient constitutional justification

**AMY ACTON has infringed the liberty interest innate to all Americans
to walk about freely and to engage with family, friends, neighbors and strangers**

153.    Great constitutional concepts, including "liberty", are "purposely left to gather meaning from experience…   [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged." *National Ins. Co. v. Tidewater Co.*, 337 U.S. 582, 646 (Frankfurter, J., dissenting).

154.    Thus, while the Supreme Court "has not attempted to define with exactness the liberty [] guaranteed" by the Due Process Clause of the Fourteenth Amendment, the Supreme Court has acknowledged that "some of the included things have been definitely stated.  Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."  *Meyer v. State of Nebraska*, 262 U.S. 390, 399 (1923).

155.    "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

156.    And in a nation of free people, the core of liberty relates to the ability of the people to interact with one another, be they family, friends, neighbors or even strangers, as opposed to enjoying such liberties solely at the whim or *noblesse oblige* of a government official.

157.    "The Constitution promises liberty to all within its reach."  *Obergefell v. Hodges*, __ U.S. __, 135 S.Ct. 2584, 2593 (2015).

158.    "The fundamental liberties protected by [the Due Process Clause] include most of the rights enumerated in the Bill of Rights.  In addition[,] these liberties extend to certain personal choices central to individual dignity and autonomy…."  *Obergefell v. Hodges*, __ U.S. __, 135 S.Ct. 2584, 2597 (2015)(internal citation omitted).

159.    "In the American legal tradition, liberty has long been understood as individual freedom *from* governmental action."  *Obergefell v. Hodges*, __ U.S. __, 135 S.Ct. 2584, 2634 (2015)(Thomas,  J., dissenting).

160.     "[L]iberty in the eighteenth century was thought of much more in relation to 'negative liberty'; that is, freedom from, not freedom to, freedom from a number of social and political evils, including arbitrary government power." *Obergefell v. Hodges*, __ U.S. __, 135 S.Ct. 2584, 2635 (2015)(Thomas,  J., dissenting)(quoting J. Reid, The Concept of Liberty in the Age of the American Revolution 56 (1988)).

161.     "When the colonists described laws that would infringe their liberties, they discussed laws that would prohibit individuals 'from walking in the streets and highways on certain saints days, or from being abroad after a certain time in the evening, or...restrain [them] from working up and manufacturing materials of [their] own growth.'" *Obergefell v. Hodges*, __ U.S. __, 135 S.Ct. 2584, 2635 (2015)(Thomas,  J., dissenting)(quoting Downer, A Discourse at the Dedication of the Tree of Liberty, in 1 C. Hyneman & D. Lutz, American Political Writing During the Founding Era 1760-1805, at 101 (1983)).

162.     AMY ACTON, acting under color of state law, has imposed and decree restrictions and prohibitions on the people of the State of Ohio, including MARK W. MILLER, that go significantly beyond "walking in the streets and highways on certain saints days"; instead, AMY ACTON, acting under color of state law, has imposed and decreed restrictions and prohibitions on the people of the State of Ohio of essentially being out in society for nearly three months so as to prohibit any meaningful human interaction.

163.     The extreme scope and length of the decrees and actions of AMY ACTON is of such a nature so as to infringe the liberty protected by the Due Process Clause of the Fourteenth Amendment of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend the Bellwether Festival or The Country Fest, including MARK W. MILLER.

164.    There is neither a compelling governmental interest or a significant governmental interest that justifies the decrees and actions of AMY ACTON whereby the liberty interest of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend the Bellwether Musical Festival can be infringed.

165.    There is neither a compelling governmental interest or a significant governmental interest that justifies the decrees and actions of AMY ACTON whereby the liberty interest of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend The Country Fest can be infringed.

166.    There is neither a compelling governmental interest or a significant governmental interest that justifies the decrees and actions of AMY ACTON whereby the liberty interest of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend parades, fairs, festivals, and carnivals throughout the State of Ohio (with the exception of county fairs) can be infringed.

167.    The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON upon the liberty interest of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend the Bellwether Musical Festival is not being done in the least restrictive or even a narrowly tailored manor to any putative governmental interest that may actually exist to justify the absolute ban or restrictions.

168.    The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON upon the liberty interest of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend The Country Fest is not being done in the least restrictive or even a narrowly tailored manor to any putative governmental interest that may actually exist to justify the absolute ban or restrictions.

169.    The absolute ban or restrictions imposed by the decrees and actions of AMY ACTON upon the liberty interest of the sponsors, organizers, producer, performers and those in attendance at or who desire to attend parades, fairs, festivals, and carnivals throughout the State of Ohio (with the exception of county fairs) is not being done in the least restrictive or even a narrowly tailored manor to any putative governmental interest that may actually exist to justify the absolute ban or restrictions.

## COUNT I
## VIOLATION OF RIGHT TO FREE SPEECH
### (42 U.S.C. § 1983 / First and Fourteenth Amendments)

170.    Plaintiffs incorporate by reference the foregoing allegations as if fully restated herein.

171.    The decrees and actions of AMY ACTON have violated and threaten to violate the First Amendment rights of the Plaintiffs, including freedom of speech and freedom to peaceable assembly.

172.    Such infringement of fundamental constitutional rights by AMY ACTON do not satisfy the applicable constitutional standard or scrutiny, both as-applied to Plaintiffs and facially.

173.    As a direct and proximate result of the decrees and actions of AMY ACTON, Plaintiffs have suffered damages.

174.    Plaintiffs face the real and imminent threat of irreparable injury to their First Amendment rights.

175.    The public interest always supports vindicating constitutional rights.

## COUNT II
## VIOLATION OF RIGHT TO FREE SPEECH
### (42 U.S.C. § 1983 / Fourteenth Amendments – Due Process)

176.    Plaintiffs incorporate by reference the foregoing allegations as if fully restated herein.

- 36 -

177. The decrees and actions of AMY ACTON have violated and threaten to violate the innate rights of personal and individual liberty of Plaintiffs, as well as such rights of others who would otherwise associate and interact with Plaintiffs free from government dictate.

178. Such infringement of fundamental constitutional rights by AMY ACTON does not satisfy the applicable constitutional standard or scrutiny, both as-applied to Plaintiffs and facially.

179. As a direct and proximate result of the decrees and actions of AMY ACTON, Plaintiffs have suffered damages.

180. Plaintiffs face the real and imminent threat of irreparable injury to their First Amendment rights.

**COUNT III**
**VIOLATION OF RIGHT TO FREE SPEECH**
**(42 U.S.C. § 1983 / Fourteenth Amendments– Equal Protection)**

181. Plaintiffs incorporate by reference the foregoing allegations as if fully restated herein.

182. Through her decrees and actions, AMY ACTON has invidiously discriminated against the planned and desired speech of Plaintiffs solely because said speech will be made by and/or received by a "mass gathering" (which AMY ACTON has defined as any convening of 10 or more people greater) while, at the same time, through her decrees and actions, allowing others to engage in speech even when said speech was made by and/or received by a "mass gathering".

183. Such discriminatory treatment of fundamental constitutional rights by AMY ACTON does not satisfy the applicable constitutional standard or scrutiny, both as-applied to Plaintiffs and facially.

184. As a direct and proximate result of the decrees and actions of AMY ACTON, Plaintiffs have suffered damages.

185.   Plaintiffs face the real and imminent threat of irreparable injury to their First Amendment rights.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.  that this Court render a declaratory judgment declaring that the orders and decrees of AMY ACTON, including, without limitation, the *Director's Updated and Revised Order* issued on May 29, 2020, are invalid as applied to the Bellwether Music Festival and The Country Fest, as well as the sponsors, organizers, producer, performers and those in attendance at or who desire to attend either the Bellwether Music Festival and The Country Fest, including, without limitation, MARK W. MILLER;

B.  that this Court render a declaratory judgment declaring that the orders and decrees of AMY ACTON, including, without limitation, the *Director's Updated and Revised Order* issued on May 29, 2020, are invalid facially as to "parades, fairs, festivals, and carnivals" as such activities enjoy protection under the First Amendment;

C.  that this Court issue a preliminary injunction and permanent injunction precluding AMY ACTON, in both her official and individual capacity, the WARREN COUNTY HEALTH DISTRICT, and the STARK COUNTY COMBINED GENERAL HEALTH DISTRICT, together with their officers, agents, servants, employees and attorneys, and those acting in concert or participation with them, including, without limitation, any department or agency of the State of Ohio and any law enforcement officer, from undertaking any actions to restrict or prohibit, in any manner, the holding of the Bellwether Music Festival and The Country Fest, including not to impede or threaten any vendors who provide support for such festivals and events, as well as precluding any retaliatory action related thereto;

D.  that this Court issue a preliminary injunction and permanent injunction precluding AMY ACTON, in both her official and individual capacity, the WARREN COUNTY HEALTH DISTRICT, and the STARK COUNTY COMBINED GENERAL HEALTH DISTRICT, together with their officers, agents, servants, employees and attorneys, and those acting in concert or participation with them, including, without limitation, any department or agency of the State of Ohio and any law enforcement officer, from undertaking any actions to restrict or prohibit, in any manner, the holding of "parades, fairs, festivals, and carnivals", including not to impede or threaten any vendors who provide support for such "parades, fairs, festivals, and carnivals", as well as precluding any retaliatory action related thereto;

E.  that this Court retain jurisdiction of this matter for the purpose of enforcing any order or judgment that issues;

F.  that this Court award Plaintiffs' costs and expenses of this action, including a reasonable attorneys' fees award in accordance with 42 U.S.C. § 1988;

G.  that this Court award damages of at least nominal damages;

H.  that this Court otherwise adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment; and

I.  that this Court grant any other relief to which Plaintiffs are entitled, in law or in equity.

Respectfully submitted,

 */s/ Curt C. Hartman*
Curt C. Hartman (0064242)
The Law Firm of Curt C. Hartman
7394 Ridgepoint Drive, Suite 8
Cincinnati, OH  45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Christopher P. Finney (0038998)
Rebecca Heimlich (0064004)
Finney Law Firm LLC
4270 Ivy Point Blvd., Suite 225
Cincinnati, OH  45245
(513) 943-6655
*chris@finneylawfirm.com*
*rsh@finneylawfirm.com*

*Attorneys for Plaintiffs*